**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:16-CV-81277-ROSENBERG/HOPKINS**

In re:

GCC REALTY COMPANY, LLC,

     Debtor.

_____/

RICHARD J. SABELLA and
ALLERAND 675 COMPANY, LLC,

     Appellants,

v.

PHILIP KASSOVER, individually and as executor
of the Estates of Nathan Kassover and Ruth Kassover,
and MARGARET SMITH, Trustee,

     Appellees.

_____/

**CASE NO. 9:16-CV-81278-ROSENBERG/HOPKINS**

In re:

GCC REALTY COMPANY, LLC,

     Debtor.

_____/

RICHARD J. SABELLA and
ALLERAND 675 COMPANY, LLC,

     Appellants,

v.

PHILIP KASSOVER, individually and as executor
of the Estates of Nathan Kassover and Ruth Kassover,
and MARGARET SMITH, Trustee,

     Appellees.

_____/

CASE NO. 9:16-CV-81279-ROSENBERG/BRANNON

In re:

GCC REALTY COMPANY, LLC,

 Debtor.

_____/

MARGARET SMITH, as Chapter 7 Trustee
of the Estate of GCC Realty Company, LLC,

 Plaintiff,

v.

PRISM VENTURE PARTNERS, LLC,
RICHARD SABELLA, and RJS REALTY CORP.,

 Defendants.

_____/

RICHARD SABELLA,

 Appellant,

v.

MARGARET SMITH, Trustee,

 Appellee.

_____/

## CONSOLIDATED OPINION AND ORDER

 This Consolidated Opinion and Order addresses three bankruptcy appeals filed by Appellants, Richard J. Sabella and Allerand 675 Company, LLC.[1] Through these appeals, Appellants challenge the bankruptcy court's orders (1) dismissing the underlying Chapter 7 bankruptcy case and denying as moot a motion to approve the settlement of a related adversary proceeding,[2] (2) denying a

_____

[1] Neither GCC Realty Company, LLC, the Debtor in the underlying bankruptcy case, nor Margaret Smith, the Trustee, has joined in these appeals.
[2] Case no. 9:16-cv-81278-RLR.

2

motion to approve the sale by auction of the adversary proceeding,[3] and (3) dismissing the adversary proceeding.[4] The Court has carefully considered the briefs of the parties and the entire record on appeal. In addition, the Court heard oral argument on March 3, 2017, and is otherwise fully advised in the premises. For the reasons set forth below, the bankruptcy court's orders are AFFIRMED and Appellants' appeals are DENIED.

## I.    BACKGROUND

Appellee Philip Kassover and his family owned The Garden City Company, Inc. until 2002, when Appellant Richard Sabella acquired the company through merger following a bankruptcy auction. The Garden City Company, Inc. subsequently merged into what is now GCC Realty Company, LLC.[5] Several years after Sabella acquired GCC, Kassover obtained a judgment in New York state court against GCC and Peyton Gibson, the shareholder trustee of the GCC merger proceeds, for amounts owed in connection with Sabella's acquisition of GCC.

To date, Kassover has not collected on that judgment. Kassover asserts that he has been unable to do so because Sabella has manipulated GCC's assets to ensure that the company never has cash on hand. For that reason, on August 14, 2008, Kassover initiated a fraudulent conveyance action in New York state court against GCC, Sabella, and others by filing a summons with notice.[6]

One month later, on September 15, 2008, GCC filed a voluntary Chapter 11 bankruptcy case in the Southern District of Florida, staying Kassover's fraudulent conveyance action. After three years, on September 22, 2011, the Chapter 11 bankruptcy case was dismissed on GCC's own motion as a two-party dispute between Sabella and Kassover.

---

[3] Case no. 9:16-cv-81277-RLR.
[4] Case no. 9:16-cv-81279-RLR.
[5] Throughout the remainder of this Consolidated Opinion and Order, the Court refers to The Garden City Company, Inc. and its successor-in-interest, GCC Realty Company, LLC as "GCC".
[6] New York Rules of Civil Procedure permit the commencement of an action by filing either a summons and complaint or a summons with notice. *See* N.Y. C.P.L.R. 304(a). In actions commenced by filing a summons with notice, the time for service of a complaint is determined pursuant to N.Y. C.P.L.R. 3012(b).

Very shortly thereafter, on October 4, 2011, petitioning creditor Warren Malone initiated an involuntary Chapter 7 bankruptcy case[7] (the "Chapter 7 Case") against GCC in the Southern District of Florida, which again stayed Kassover's fraudulent conveyance action. Kassover, Sabella, and Allerand 675 Company, LLC ("Allerand"), a company owned and controlled by Sabella, were among the creditors in the Chapter 7 Case. On November 10, 2011, Michael Bakst was appointed and immediately resigned as trustee in the Chapter 7 Case. Later that same day, Robert Furr replaced Bakst as trustee. After a couple of years, Sabella and Allerand filed a motion to remove Furr as trustee, asserting that he had failed to properly administer the bankruptcy estate. Before that motion was heard, on January 17, 2014, Furr resigned as trustee and was replaced by Margaret Smith (the "Trustee").

On March 5, 2015, Kassover's fraudulent conveyance action was removed from New York state court and transferred to bankruptcy court in the Southern District of Florida. The Trustee identified this action (the "Adversary Proceeding")[8] as an asset of the bankruptcy estate and sought to substitute herself as plaintiff. On December 1, 2015, the bankruptcy court entered an order approving the substitution of the Trustee as plaintiff in the Adversary Proceeding.

On December 8, 2015, the Trustee filed a Motion to Approve Settlement Agreement Between (I) Margaret Smith, Trustee; and (II) Richard J. Sabella; and for Entry of Bar Order (the "Second Settlement Motion").[9] Pursuant to the parties' settlement agreement, the Trustee would voluntarily dismiss the Adversary Proceeding in exchange for a $200,000 payment from Sabella and the waiver, subordination, and release of certain claims by Sabella and Allerand. Kassover objected to the Second Settlement Motion and sought dismissal of the Chapter 7 Case.

---

[7] Case no. 11-37985-PGH.
[8] Case no. 15-01134-PGH.
[9] The bankruptcy court had previously denied the parties' first settlement motion.

4

On December 10, 2015, Kassover filed his Third Renewed Motion to Dismiss the Chapter 7 Case. In that Motion, Kassover argued that the Chapter 7 Case had become a two-party dispute between Sabella and Kassover since Allerand had acquired six other creditors' claims on November 24, 2015. Kassover also argued that dismissal was appropriate because there was nothing left to administer—the Adversary Proceeding was the bankruptcy estate's only asset and the value of that asset was insufficient to allow a meaningful distribution to GCC's creditors.

On January 13, 2016, the bankruptcy court held a hearing on the Trustee's Second Settlement Motion and Kassover's Third Renewed Motion to Dismiss. During that hearing, the court explained that it would either approve the settlement of the Adversary Proceeding or dismiss the Chapter 7 Case:

> I think it boils down to whether your proposed settlement is reasonable settlement. That's what I really think it boils down to. Because if it is a reasonable settlement, the case shouldn't be dismissed. If it is not a reasonable settlement, the case should be dismissed. I really think that's what it boils down to.
>
> Mr. Mrachek's client [Kassover] thinks it's worth a lot of money. The trustee's proposed settlement, I think says it's not with a lot of money, it's worth a couple hundred grand. I think I have to hear testimony on that issue, and either approve or not approve the settlement. And if I approve it, I'm not going to dismiss the case. If I don't approve it, I'll dismiss the case.

See Hrg. Tr. 16:19–17:8. The court later reiterated: "And I've told you all what's going to happen. If I approve the compromise, the case is not going to get dismissed. If I don't, it's going to get dismissed." See Hrg. Tr. 20:23–21:1. Following this hearing, it became clear that pursuing the Second Settlement Motion would require extensive discovery and additional fees.

In recognition of that fact, on April 11, 2016, the Trustee filed a Motion for Entry of Order Approving Sale by Auction of Cause of Action, Free and Clear of Liens, Claims and Encumbrances (the "Auction Motion"), seeking to sell the Adversary Proceeding at auction as an alternative to settlement. The Second Settlement Motion was not, however, withdrawn; it remained pending as a

backup in the event the bankruptcy court denied the Auction Motion. The Trustee disclosed in the Auction Motion that Sabella had made an initial bid of $25,000 for the Adversary Proceeding. Kassover objected to the Auction Motion and, on April 14, 2016, filed an Amended Third Renewed Motion to Dismiss the Chapter 7 Case.

On May 3, 2016, the bankruptcy court held a hearing on the Trustee's Auction Motion. During that hearing, counsel for the Trustee represented that Sabella's $25,000 bid was intended only as a starting point and that she expected there to be "vigorous bidding" at the auction. For example, counsel for the Trustee stated: "We had hoped for a higher offer to start the bidding. And this is just a starting offer of $25,000." *See* Hrg. Tr. 5:22–24. Counsel for the Trustee also said: "So far we have gotten four serious inquiries. We've sent out a bunch of documents, and hopefully we can get some more interest. Mr. Kassover has indicated he is going to bid at the auction. We expect there to be vigorous bidding at the auction." *See* Hrg. Tr. 6:14–19. Finally, counsel for the Trustee stated: "[W]e think that this will be a good way to determine what the parties think this cause of action is worth, and have Your Honor decide if it's a fair price. If not we can always go back to the settlement." *See* Hrg. Tr. 9:18–22. Also during that hearing, the bankruptcy court noted that it was inclined to dismiss the Chapter 7 Case as a two-party dispute rather than approve the Auction Motion:

> I'm going to continue this until next week and just see what I do on the motion to dismiss. I will tell you, I'm inclined to dismiss the case, because it really is a two party dispute now. That's my inclination. . . . I frankly, don't see the benefit to the estate any longer."

*See* Hrg. Tr. 19:14–24.

On May 10, 2016, the bankruptcy court held a hearing on Kassover's Amended Third Renewed Motion to Dismiss and the Trustee's Auction Motion. During that hearing, the bankruptcy court noted that the Chapter 7 Case had essentially become a two-party dispute, but explained that it may not technically be one in light of the fact that, in addition to the claims of Sabella, Allerand, and

Kassover, there remained a relatively small claim by the IRS and the Trustee's administrative fees

and expenses. *See* Hrg. Tr. 4:5–16. The court also noted Kassover's concerns about the auction—in

which Sabella (a creditor holding the majority of claims) had placed an initial bid of $25,000 for the

Adversary Proceeding that had begun as a fraudulent conveyance action brought by Kassover against

Sabella and others—and about whether there would ever be enough in the bankruptcy estate to allow

a meaningful distribution to GCC's creditors after payment of administrative expenses:

> I'll make the other observations concerning the motion to sell. And Mr. Mrachek [counsel for Kassover] has raised a couple of issues. Most—the two large issues is, number one, there's no benefit to the estate, because there will never be enough money from the sale, in his opinion, and his client's opinion, to pay off the administrative expenses. And if even if there were, one of the potential purchasers of the cause of action would potentially receive 90 percent of the proceeds. And that's a valid concern.
>
> The other is, if one of the potential purchasers is the prevailing purchaser, there's an issue concerning good faith, or lack thereof, in making the—in being the successful bidder. I'm not sure I agree with that position, but is it a valid concern.
>
> Ms. Cloyd [counsel for the Trustee] has also indicated that she, her firm, her firm is owed in excess of $200,000, but that she recognizes that, or concedes that her firm may not get paid in full, and has not made any concrete offers, this is not an offer, but in essence saying, her firm may have to cut some of their fees.

*See* Hrg. Tr. 4:17–5:13. Next, the court explained that it would allow the auction to proceed but

would wait until it had additional information before final approval of the sale:

> So this is what I'm going to do. I'm going to authorize the sale to go forward, but not approve the results of the sale. I am going to wait to see who the successful bidder is, the amount of the bid.
>
> And in deciding whether to accept the bid or not, I'm going to consider a number of criterions, including the amount of the successful bidder, that the successful bidder bid, who the successful bidder is, whether Ms. Cloyd's firm has finalized an agreement to reduce their fees. And I am in no way requiring Ms. Cloyd's firm to do so, but I think it's important for the trustee to make a guesstimate after the sale as far as what distributions there will be to the various creditors, whether there will be money payable to the various creditors above the administrative expenses, and the IRS, including the proceeds of any potential settlement with Mr. Furr.
>
> At that point I think I can make an educated decision as to whether I should approve the sale, and/or dismiss the case. Without that information I really can't

make an educated decision, an informed decision. Everything else until then is hypothesis theories. I don't know what the answer is. Okay.

*See* Hrg. Tr. 5:20–6:17. The court ultimately decided:

> "[T]his is my inclination, unless someone has got a strong feeling otherwise. Set the sale for the 14th, and set the motion to dismiss and the approval of the sale for the 21st. And the reason I say that is, have the bid, everyone understands who the ultimate high bidder is. That gives Ms. Smith time to, in essence, comply with what I've just said, that is, give me a guesstimate of what the distributions are for the creditors."

*See* Hrg. Tr. 8:17–25. Also during that hearing, the bankruptcy court granted the Trustee's motion for extension of time to file a complaint in the Adversary Proceeding through July 11, 2016. *See* Hrg. Tr. 13:13–14.[10] Finally, the court noted that it would either approve the auction or dismiss the Chapter 7 Case:

> If the sale price is low, and is not even enough to pay a portion of the administrative expenses, that is a double edged sword. The double edged sword in that means that the cause of action isn't worth very much, and therefore, I should probably approve the sale.
>
> At the same time, it accents, or emphasizes, that there is really nothing here for the Court to do, and the case maybe should be dismissed. It's a double edged sword. Just so both sides know. I'm not sure how I will come out on that sword, one way or the other.

*See* Hrg. Tr. 14:8–19.

Consistent with what it stated on the record during the that hearing, on May 16, 2016, the bankruptcy court entered a written order setting the auction of the Adversary Proceeding for June 14, 2016, and setting a hearing for final approval of the sale for June 21, 2016. The minimum opening bid (made by Sabella) was set at $25,000, with competing bids to be in $10,000 increments.

---

[10] As noted above, the Adversary Proceeding began as a fraudulent conveyance action in New York state court. New York law permits a plaintiff to initiate a case by filing a summons with notice, with the complaint to be filed after the defendant has appeared. After the fraudulent conveyance action was removed to bankruptcy court and became the Adversary Proceeding, the bankruptcy court granted multiple extensions of time to file a complaint. This was the last extension of time granted.

On June 14, 2016, the auction of the Adversary Proceeding was held in open bankruptcy court. At the outset, counsel for the Trustee stated: "[W]e're not going to have much of an auction because, besides the initial offer of Richard Sabella, no other parties have submitted a bid." *See* Hrg. Tr. 4:13–16. After asking whether there were any objections not already of record, the bankruptcy court said he would approve the sale: "Anyone have any objection to the sale that has not already raised the objection, and that objection having been resolved? Meaning, Mr. Mrachek's client [Appellee] objected at the first hearing, and I've overruled some of those objections. So hearing none, then I will approve the sale." *See* Hrg. Tr. 5:3–9.

On June 17, 2016, Sabella submitted a Memorandum in Support of Final Approval of Auction. In that Memorandum, Sabella acknowledged that, "[p]ursuant to the Approval Order, a hearing to consider 'final approval' of the sale is to be conducted on June 21, 2016 at 1:00 p.m." Sabella argued that the auction should be finally approved because the acceptance of Sabella's bid was in the sound business judgment of the Trustee, the price was not grossly inadequate, there was not fraud or collusion, and the factors set forth in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990) were satisfied.

On June 21, 2016, the bankruptcy court held a hearing on Kassover's Amended Third Renewed Motion to Dismiss the Chapter 7 Case and the final approval hearing for the auction of the Adversary Proceeding. During that hearing, counsel for Kassover explained—and counsel for Allerand and Sabella did not dispute—that the IRS had a claim of about $20,000, the Sabella entities had claims of about $19 million, and the Kassover entities had claims of about $7.8 million. As a percentage, Sabella had 70% of the claims (91% if claims to which the Trustee objected were excluded) and Kassover had about 30% of claims (8% if claims to which the Trustee objected were excluded). The only asset the bankruptcy estate had was the Adversary

Proceeding. The Trustee's fees and costs were approximately $246,000. There was just over $62,000 in the bankruptcy estate, not counting Sabella's winning $25,000 bid (or the alternative proposed $200,000 settlement) for the Adversary Proceeding. *See* Hrg. Tr. 5:13–6:21.

The bankruptcy court noted that even with the $25,000 from the auction of the Adversary Proceeding, and a potential $20,000 from Furr (the former trustee against whom the bankruptcy estate may have had a claim for inadequate administration), there would still be nothing in the bankruptcy estate for unsecured creditors after the Trustee's fees and the IRS's claim were paid. *See* Hrg. Tr. 21:17–21. The Trustee's counsel said her firm would reduce their fees in order to resolve the Chapter 7 Case, but the bankruptcy court said it would not expect her to take such an enormous cut. *See* Hrg. Tr. 21:22–22:8.

Counsel for Sabella and Allerand stated that, after the bankruptcy court denied the first motion to approve settlement of the Adversary Proceeding, Allerand had acquired a number of other creditors' claims in order to facilitate another settlement. In other words, if the case were essentially a two-party dispute at that point, it was only because Allerand had acquired other creditors' claims to facilitate settlement. *See* Hrg. Tr. 27:2–23. But the bankruptcy court noted that there may have been a moral obligation to get one of those creditors paid, and also that a number of the other creditors were related to or controlled by Sabella and/or Allerand. Counsel for Sabella and Allerand acknowledged that this was true. *See* Hrg. Tr. 27:24–28:23.

Ultimately, the bankruptcy ruled as follows:

I'm going to grant the motion to dismiss. There is nothing here for the general unsecured creditors. I am going to retain jurisdiction to rule on Ms. Cloyd and Ms. Smith's fee applications. I am ordering that the trustee not distribute or turn over the funds in the estate until I make such a determination. . . . I also retain jurisdiction over any claims of any professional involved in this case for any act that gave rise to the claim that occurred during this case.

The reason I'm dismissing the case is, there's really no assets to administer, other than the cause of action against Mr. Sabella. And frankly, it's a – at that point it's

10

a two party dispute between Mr. Kassover and Mr. Sabella. And there is nothing – no upside to the estate.

I accept Ms. Cloyd's representation that the trustee and she have thoroughly investigated the potential cause of action against Mr. Sabella, and that there is not any value to the estate in pursuing that cause of action.

I also find evidence in that Mr. Sabella's offered $25,000 for that cause of action. That shows that the claim is basically for nuisance value.

I'm not going to approve that sale, because I find it inequitable to allow Mr. Sabella to pay a nominal amount for a claim that, once I dismiss the case, is really a case between Mr. Kassover and Mr. Sabella, Mr. Sabella and Mr. Kassover, resolve the matter, ignore the matter, do whatever they're going to do.

*See* Hrg. Tr. 32:14–33:24. When asked whether the bankruptcy court would retain jurisdiction over the Adversary Proceeding, the court said: "I am not. I'm dismissing the adversary when I dismiss the [Chapter 7] case." *See* Hrg. Tr. 35:3–6.

On June 23, 2016, the Trustee's counsel filed a final fee application requesting legal fees in the amount of $240,393.00 and expenses in the amount of $6,089.64. On July 14, 2016, the bankruptcy court entered written orders granting the Amended Third Renewed Motion to Dismiss (in which all pending motions, including the Second Settlement Motion, were denied as moot), denying the Auction Motion, and dismissing the Adversary Proceeding for the reasons stated on the record during the hearing held June 21, 2016.  On August 15, 2016, the bankruptcy court awarded the Trustee's counsel $96,816.50 in fees and $6,089.64 in expenses.

On September 6, 2016, the Trustee filed a Motion to Approve Agreement Between the Trustee, Former Trustee, Robert C. Furr, and Furr and Cohen, P.A., with Respect to Turnover of Interim Fee Award Paid to Furr and Cohen, PA, in Exchange for Release from Bankruptcy Estate. On September 26, 2016, the bankruptcy court granted that Motion. Pursuant to the settlement reached, Furr paid $20,000, all of which went toward the Trustee's administrative fees and expenses.

On July 15, 2016, Sabella and Allerand filed Notices of Appeal as to the bankruptcy court's orders dismissing the Chapter 7 Case and denying as moot the Second Settlement Motion, denying the Auction Motion, and dismissing the Adversary Proceeding.

## II.    JURISDICTION

This Court has jurisdiction over each of the bankruptcy court's orders on appeal pursuant to 28 U.S.C. § 158(a)(1).

## III.    STANDARD OF REVIEW

The bankruptcy court's orders may not be disturbed on appeal absent an abuse of that court's discretion. *See In re Pegasus Wireless Corp.*, 391 F. App'x 802, 803 (11th Cir. 2010); *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005); *In re State Street Houses, Inc.*, 305 B.R. 738, 741 (S.D. Fla. 2003). An abuse of discretion occurs if the bankruptcy judge fails to apply the proper legal standard, or to follow proper procedures in making its determination, or bases its award upon findings of fact that are clearly erroneous. *In re Red Carpet Corp. of Panama City Beach*, 902 F. 2d 883, 890 (11th Cir. 1990). To the extent Appellants preserved their claim that they were denied due process by the bankruptcy court's failure to review the merits of the Second Settlement Motion, that issue is a question of law that this Court reviews *de novo*. *In re Seare*, 515 B.R. 599, 615 (B.A.P. 9th Cir. 2014).

## IV.    DISCUSSION

The Court addresses the appeals before it in the following order: (1) the bankruptcy court's order dismissing the Chapter 7 Case and denying as moot the Second Settlement Motion (case no. 9:16-cv-81278-RLR); (2) the bankruptcy court's order denying the Auction Motion (case no. 9:16-cv-81277-RLR); and (3) the bankruptcy court's order dismissing the Adversary Proceeding (case no. 9:16-cv-81279-RLR).

**A. Order Dismissing Chapter 7 Case and Denying as Moot Second Settlement Motion**

In their briefs and at oral argument, Appellants contended that the bankruptcy court abused its discretion in dismissing the Chapter 7 Case as a two-party dispute when (1) there were additional creditors other than Allerand and Kassover and (2) a large number of creditors' claims were extinguished by Allerand's purchase and consolidation of those claims. Appellants further contended that the bankruptcy court abused its discretion in dismissing the Chapter 7 Case for there being nothing left to administer when (1) there was a pending settlement that could have brought $200,000 into the estate, (2) there was an ability to sue or enter into a settlement with the former trustee, Robert Furr, for inadequate administration, and (3) there was an ability to sue Peyton Gibson for contribution on any funds the estate disbursed to Kassover. Finally, Appellants contended that the bankruptcy court abused its discretion and violated their due process rights in denying as moot the Second Settlement Motion without holding an evidentiary hearing or otherwise evaluating the merits.

However, in their proposed Memorandum Order submitted following oral argument, Appellants appear to have abandoned many of these arguments. *See* Case No. 9:16-cv-81277-RLR, DE 31-1 at 9–10. Appellants' proposed Memorandum Order would reverse the bankruptcy court's order denying the Auction Motion, rendering moot their appeal of the bankruptcy court's order denying the Second Settlement Motion. *See id.* at 7–10. Although the proposed Memorandum Order suggests that dismissal of the Chapter 7 Case as a two-party dispute was inappropriate, it concludes that dismissal for there being nothing left to administer was appropriate because (1) the appeal of the order denying the Second Settlement Motion had been rendered moot, (2) the Trustee had entered into a settlement with Robert Furr, which had been approved by the bankruptcy court, and (3) "there is no current ability to sue Peyton Gibson for

contribution where there has been no distribution made to Appellee Kassover and therefore such alleged asset is not yet ripe, is contingent, and is highly speculative." *See id.* at 9–10. Ultimately, Appellants' proposed Memorandum Order would affirm the bankruptcy court's dismissal of the Chapter 7 Case and denial of the Second Settlement Motion. *See id.* at 10.

Despite Appellants' apparent abandonment, the Court addresses each of Appellants' challenges to the bankruptcy court's order dismissing the Chapter 7 Case and denying as moot the Second Settlement Motion.

### 1. Dismissal of Chapter 7 Case as Two-Party Dispute

The bankruptcy court may dismiss a case when that court is used as "an alternative to proceeding with pending State Court litigation to resolve what is essentially a two-party dispute." *In re Kass*, 114 B.R. 308, 309 (Bankr. S.D. Fla. 1990). Appellants have never argued otherwise before this Court.

Rather, Appellants first argue that virtually all bankruptcy cases dismissed as two-party disputes were dismissed relatively quickly, within months after they were filed. According to Appellants, this means that the bankruptcy court's dismissal of the Chapter 7 Case nearly five years after it was filed was untimely and therefore improper. However, Appellants cite no statute, case law, or other authority suggesting that a bankruptcy court cannot dismiss a case as a two-party dispute after a certain amount of time. To the contrary, Appellants acknowledged at oral argument that the bankruptcy court has fairly broad discretion under 11 U.S.C. § 707(a)[11] and 11 U.S.C. § 305(a)[12]—the statutes pursuant to which Kassover sought and the bankruptcy

---

[11] 11 U.S.C. § 707(a) permits the court to "dismiss a case under this chapter only after notice and a hearing and only for cause . . ." "With only minor exception, the power of bankruptcy courts under § 707 to dismiss 'for cause' has, since its enactment, been understood by courts as the power to prevent 'manifestly inequitable result[s].'" *In re Piazza*, 719 F.3d 1253, 1264 (11th Cir. 2013).

[12] 11 U.S.C. § 305(a) provides that: "The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension."

court granted dismissal of the Chapter 7 Case—and that neither sets any time limit on dismissal. Indeed, 11 U.S.C. § 305(a) explicitly permits dismissal "at any time." Moreover, as Appellee notes, there are in fact a number of cases demonstrating that dismissal as a two-party dispute during the later stages of a bankruptcy case is not unusual. *See, e.g.*, *In re Adell*, 332 B.R. 844, 849 (Bankr. M.D. Fla. 2005) (dismissing a case that was commenced as a Chapter 11 and converted to a Chapter 7 nearly two years after the commencement of the case). GCC's own prior Chapter 11 bankruptcy case serves as an example: In September of 2011, GCC (controlled at the time by Sabella) sought and was granted dismissal of its Chapter 11 bankruptcy case as a two-party dispute between Sabella and Kassover, more than three years into that proceeding. During oral argument, Appellants were unable to explain why the timing of the dismissal of the Chapter 7 Case was problematic while the timing of the dismissal of the Chapter 11 case was not. For all of these reasons, the Court cannot conclude that dismissal of the Chapter 7 Case as a two-party dispute was untimely.

Appellants next argue that the Chapter 7 Case was not a two-party dispute at the time of dismissal because, in addition to Allerand's and Kassover's claims, there remained the IRS's claim and the Trustee's administrative claims. While there were a number of creditors at the beginning of the Chapter 7 Case, Allerand acquired six creditors' claims on November 24, 2015. Even after Allerand acquired these claims, there remained the claims of Allerand (controlled by Sabella), Kassover, and the IRS, as well as the administrative claims of the Trustee. However, as Appellee points out, the IRS claim amounted to a fraction of 1% of the total claims, and administrative claims are not to be considered in this analysis. *See In re Steffen*, 426 B.R. 907 (Bankr. M.D. Fla. 2010); *In re Adell*, 332 B.R. 844 (B.R. M.D. Fla. 2005); *In re Energy Partners, Ltd.*, 409 B.R. 211, 216 (Bankr. S.D. Tex. 2009) (the purpose of the bankruptcy estate

"is not principally to serve as fund for payment of professional fees"). Accordingly, the Court cannot conclude that the bankruptcy court abused its discretion in determining that the Chapter 7 Case had become a two-party dispute at the time of dismissal.

Finally, Appellants argue that—if the Chapter 7 Case was a two-party dispute at the time of dismissal—it had only become one due to Allerand's acquisition of other claims in an effort to facilitate settlement. Dismissal of the Chapter 7 Case as a two-party dispute therefore runs contrary to public policy in favor of settlement. While Appellants cite authority for the general policy in favor of settlement, they cite no statute, case law, or other authority suggesting that a case may not be dismissed as a two-party dispute after claims have been consolidated through acquisition by a single creditor, even where the purpose of consolidation is to facilitate settlement. Furthermore, as Appellants acknowledge, Allerand's acquisition of other claims was not purely to facilitate settlement. During a hearing held on June 21, 2016, the bankruptcy court noted that Allerand and Sabella controlled or were connected to at least some of the creditors whose claims Allerand acquired, and that there may have been a moral obligation to see that those creditors were paid. Counsel for Allerand and Sabella acknowledged as much during that hearing, stating: "That is correct. I mean, there was some relation between all the parties." *See* Hrg. Tr. 27:24–28:23. Appellants again conceded this fact at oral argument before this Court. Appellants stress, and the Court acknowledges, that these related creditor claims did not meet the definition of "insider" claims set forth in the Bankruptcy Code. *See* 11 U.S.C. § 101(31). Nevertheless, it is clear that Allerand was motivated, at least in part, by considerations other than settlement. Accordingly, the Court cannot conclude that the bankruptcy court abused its discretion in dismissing the Chapter 7 Case as a two-party dispute after Allerand purchased and consolidated a number of creditors' claims.

### 2.   Dismissal of Chapter 7 Case for There Being Nothing Left to Administer

A bankruptcy court may dismiss a case when continued administration will not promote the fundamental purposes of Chapter 7, one of which is to liquidate the debtor's non-exempt assets for the benefit of the debtor's unsecured creditors. *See In re Steffen*, 426 B.R. 907, 915 (Bankr. M.D. Fla. 2010). In other words, as Appellants acknowledge, a bankruptcy court may dismiss a case when there is nothing left to administer.

Appellants argue that, at the time of dismissal, there were sufficient assets in the bankruptcy estate to allow a meaningful distribution to GCC's creditors, including: (1) the Adversary Proceeding; (2) a potential claim against the former trustee, Robert Furr, for his failure to adequately administer the estate; and (3) to the extent any distribution was made to Kassover, a potential claim for contribution against Peyton Gibson (a co-obligor under Kassover's judgment against GCC) worth 50% of the amount of any distribution to Kassover.

With respect to the Adversary Proceeding, Appellants argue that the Second Settlement Motion remained pending at the time of dismissal and, if granted, would have brought $200,000 into the bankruptcy estate. However, after filing the Second Settlement Motion, the Trustee filed the Auction Motion and an auction was held, at which Sabella placed the highest bid of $25,000.[13] The Court notes that the Second Settlement Motion was never withdrawn and remained pending as a backup in the event that the Auction Motion was denied. However, the Court declines to assume that the bankruptcy court would ultimately have granted the Second Settlement Motion rather than approve the sale of the Adversary Proceeding to Sabella for $25,000. To do so would require this Court to engage in speculation.

---

[13]   Appellants conceded at oral argument that, had the bankruptcy court approved the sale of the Adversary Proceeding to Sabella for $25,000, there could not have been a meaningful distribution to GCC's creditors.

Even assuming the bankruptcy court denied the Auction Motion, the parties would have had to conduct additional discovery—and incur additional fees—in order to proceed on the Second Settlement Motion. This was the very reason the Trustee sought to sell the Adversary Proceeding by auction instead. At least some of the $200,000 received by the bankruptcy estate pursuant to the settlement would have been consumed by these additional fees.

Setting these additional fees aside, it is unlikely that the Trustee's administrative fees would have been reduced to the extent they were had the Second Settlement Motion been granted. Following dismissal of the Chapter 7 Case, the Trustee sought legal fees in the amount of $240,393.00 and expenses in the amount of $6,089.64. The Trustee was ultimately awarded $96,816.50 in fees and $6,089.64 in expenses. The Court declines to use this reduced fee award to calculate the potential distribution to creditors if either the Second Settlement Motion or Auction Motion had been approved, when that amount was a substantial reduction from the actual fees incurred as of the time of dismissal. It is far more likely that, had the bankruptcy estate received money from the settlement or auction of the Adversary Proceeding, the Trustee would have been awarded more for her fees and expenses. The total amount of fees and expenses sought by the Trustee far exceeded and could easily have consumed even the $200,000 settlement amount, in which case there still would not have been a meaningful distribution to GCC's creditors.[14]

With respect to Robert Furr, the former bankruptcy trustee, the parties reached a settlement following dismissal of the Chapter 7 Case pursuant to which the bankruptcy estate received $20,000. That entire amount went toward the Trustee's fees and expenses rather than being distributed to GCC's creditors. Appellants argue that the bankruptcy estate could have received more if the case

---

[14] Trustee's counsel represented to the bankruptcy court that she was willing to reduce her fees to allow for a distribution to Kassover. However, the Court notes that the bankruptcy court indicated this would require a substantial reduction beyond anything the bankruptcy court would expect.

had not been dismissed prior to settlement. Such an argument requires the Court to engage in speculation, which it will not do. Moreover, Appellants conceded during oral argument that this argument is now essentially moot.

Finally, Appellants argue that they could have sued Peyton Gibson for contribution for any funds the bankruptcy estate disbursed to Kassover, who held a judgment against GCC and Gibson, jointly and severally. The Court notes, however, that this claim for contribution would only ripen after the bankruptcy estate made a distribution to Kassover. GCC's claim against Gibson never matured and could not have done so unless and until a distribution was made to Kassover.

For all of the reasons, the Court cannot conclude that the bankruptcy court's dismissal of the Chapter 7 Case for there being nothing left to administer was an abuse of that court's discretion.

### 3.   Denial of Second Settlement Motion as Moot

The bankruptcy court denied all pending motions, including the Second Settlement Motion, as moot when it dismissed the Chapter 7 Case. The bankruptcy court did not hold a hearing or otherwise evaluate the merits of the Second Settlement Motion prior to denying it as moot.[15] Appellants argue that this was an abuse of discretion and violated their due process rights because they were deprived of a property interest (*i.e.*, their substantive rights or benefits under the settlement agreement) without due process.[16]

---

[15] While they initially argued that it was error for the bankruptcy court not to hold an *evidentiary* hearing on the Second Settlement Motion, Appellants conceded at oral argument that an evidentiary hearing was not required. Appellants then refined their position, arguing that it was error not to hold a "meaningful" hearing or otherwise engage in a "meaningful" evaluation of the merits of the Second Settlement Motion.

[16] Appellants also argued that the settlement should have been approved because it was fair and equitable, it was above the lowest point in the range of reasonableness, and it satisfied the *Justice Oaks* factors. However, at oral argument, Appellants indicated that it would be inappropriate for this Court to consider these matters when the bankruptcy court did not. Appellants therefore suggested that—assuming the Court agrees that the bankruptcy court should have evaluated the merits of the Second Settlement Motion—the appropriate course would be for this Court to remand the case to the bankruptcy court to do so. Because the Court concludes that the bankruptcy court did not err in denying the Second Settlement Motion as moot without evaluating the merits, the Court does not reach these issues.

As an initial matter, the Court notes that Appellants likely had no property interest in any substantive rights or benefits under the settlement agreement, as the settlement agreement was subject to court approval under Federal Rule of Bankruptcy Procedure 9019(a) and under the terms of the settlement agreement itself. Even if Appellants had some property interest, they waived their due process argument by failing to raise it with the bankruptcy court. Appellants could have done so in a written response to Kassover's Amended Third Renewed Motion to Dismiss, during the hearing held June 21, 2016, or in a motion for reconsideration after the Chapter 7 Case was dismissed. Finally, the Court notes that there is no requirement in any statute, case law, or other authority that a bankruptcy court hear argument on, evaluate the merits of, and resolve all outstanding motions prior to dismissal. Having determined that dismissal of the Chapter 7 Case was appropriate, the bankruptcy court properly denied the Second Settlement Motion as moot.

**B. Order Denying Auction Motion**

Appellants argue that the bankruptcy court abused its discretion in denying final approval of the Auction Motion because the court created a reasonable expectation that it would be granted. Specifically, Appellants assert that they had a reasonable expectation because the bankruptcy court permitted the auction to go forward knowing that the initial bid—which might ultimately be the final bid—was Sabella's bid of $25,000 and because the bankruptcy court stated on the record immediately following the auction on June 14, 2016, "I will approve the sale."

The Court rejects Appellants' argument that, by permitting the auction to go forward, the bankruptcy court implicitly accepted that Sabella's initial bid of $25,000 may ultimately be the winning bid. While the bankruptcy court and the Trustee presumably knew it was *possible* that there would be no additional bids, the Trustee represented during the May 3, 2016 hearing preceding the

auction that Sabella's $25,000 bid was intended to be an initial bid only, not the final amount for the sale, and that she expected there would be "vigorous bidding" at the auction.

More importantly, the bankruptcy court was very clear that it was reserving final approval until a hearing was held on June 21, 2016, one week after the auction. During the hearings held on May 3, 2016 and May 10, 2016, and in its written order dated May 16, 2016, the bankruptcy court was explicit that it was only approving the auction to go forward and that it would consider final approval of the auction at a later date when it had more information, including the total amount of fees and expenses requested by the Trustee, the final amount bid at the auction, and who the winning bidder was. The bankruptcy court also made it clear that it would either approve the auction or dismiss the case. Contrary to Appellants' argument, the bankruptcy court's single statement immediately following the auction on June 14, 2016—"I will approve the sale"—is not enough to negate all other statements to the effect that final approval would be addressed separately after the bankruptcy court had more information. The fact that Sabella submitted a Memorandum in Support of Final Approval of Auction on June 17, 2016, suggests that Sabella understood as much. All parties were on notice of the procedure that the bankruptcy court intended to follow and, therefore, there was no reasonable expectation that the auction would receive final approval.

Finally, the Court notes that—even if the auction had received final approval—it is almost certain that the additional $25,000 received by the bankruptcy estate would have gone toward the Trustee's fees and expenses. Rather than extinguish the Adversary Proceeding with no benefit to GCC's unsecured creditors, the bankruptcy court dismissed the Adversary Proceeding, allowing it to proceed between Sabella and Kassover in state court. As noted above, there is no requirement that the bankruptcy court determine the merits of every pending motion before dismissal.

For all of these reasons, the Court's denial of the Auction Motion was not an abuse of discretion.

### C. Order Dismissing Adversary Proceeding

In their written briefs and at oral argument, Appellants contended that the bankruptcy court abused its discretion when it dismissed the Adversary Proceeding for the reasons stated on the record during the June 21, 2016 hearing because the Adversary Proceeding should have been dismissed on other grounds. Specifically, Appellants argued that the Adversary Proceeding was a "legal nullity" because it had been improperly initiated and that the Adversary Proceeding should have been dismissed for failure to timely file a complaint. Finally, Appellants argued that dismissal of the Adversary Proceeding prior to a meaningful evaluation of the merits of the Second Settlement Motion was an abuse of discretion and a violation of due process.[17]

However, in their proposed Memorandum Order submitted following oral argument, Appellants appear to have abandoned these arguments. *See* Case No. 9:16-cv-81277-RLR, DE 31-1 at 10. Instead, the proposed Memorandum Opinion would reverse the dismissal of the Adversary Proceeding only to the extent necessary to effectuate the sale by auction of the Adversary Proceeding to Sabella. *See id.* Accordingly, Appellants suggest that "[t]he Court need not address the other issues presented in relation to the Adversary Order." *See id.* Nevertheless, the Court addresses the arguments previously raised by Appellants.

Appellants argue that the Adversary Proceeding was never formally commenced because Kassover's summons with notice did not provide sufficient notice of the nature of the action and no complaint was ever filed. Appellants further argue that, if an action is commenced with a summons with the notice, New York law requires that a complaint be filed within 20 days after a defendant

---

[17] The Court has already addressed and rejected this argument. *See supra* Section IV.A.3. The Court has also determined that it was not error to deny the Auction Motion. *See supra* Section IV.B. The dismissal of the Adversary Proceeding therefore need not be reversed on that ground.

serves a notice of appearance; this and other procedural requirements under New York law were not satisfied. Finally, Appellants argue that the bankruptcy court's final extension of the deadline to file a complaint in the Adversary Proceeding expired on July 11, 2016, and that case was not dismissed until July 14, 2016; thus, at the time of dismissal, the bankruptcy court's deadline to file a complaint had passed. However, Appellants conceded at oral argument that the bankruptcy court indicated during the hearing held on June 21, 2016, that it was dismissing the Adversary Proceeding. At that time, the final extension of the deadline to file a complaint had not passed. Appellants' argument on this point is therefore unavailing.

More broadly, as Appellee notes, Appellants point to no statute, case law, or other authority requiring a bankruptcy court to rule on the merits of an adversary proceeding when the main bankruptcy case has been dismissed. The bankruptcy court was therefore not required to reach these issues before dismissing the Adversary Proceeding along with the Chapter 7 Case. Declining to do so was not an abuse of the bankruptcy court's discretion. Appellants may raise their arguments related to the sufficiency of the summons with notice and the timing of filing a complaint in the state court to which that case returns.

### V.    CONCLUSION

For the reasons set forth above, the Court concludes that the bankruptcy court's orders on appeal were not an abuse of that court's discretion or otherwise reversible error. Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

1. The orders of the bankruptcy court (1) granting Kassover's Amended Third Renewed Motion to Dismiss the Chapter 7 Case and denying as moot the Second Settlement Motion, (2) denying the Auction Motion, and (3) dismissing the Adversary Proceeding are **AFFIRMED**.

2. Appellants' appeals (case no. 9:16-cv-81277-RLR, 9:16-cv-81278-RLR, and 9:16-cv-81279-RLR) are **DENIED**.

3.  The Clerk of the Court is directed to **CLOSE THIS CASE** (case no. 9:16-cv-81279-RLR). All pending motions are denied as moot, all deadlines are terminated, and all hearings are cancelled.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 24th day of

March, 2017.

Copies furnished to:                              ROBIN L. ROSENBERG
Counsel of record                                UNITED STATES DISTRICT JUDG

24